# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL RICHARDSON,<br><br>  Plaintiff,<br><br>v.<br><br>R. TUMAN, et al.,<br><br>  Defendants. | Case No. 1:18-cv-01166-EPG-PC<br><br>ORDER GRANTING REQUEST TO PROCEED WITH CURRENT COMPLAINT WITHOUT REFERENCE TO ADDITIONAL DOCUMENTS (ECF No. 13)<br><br>ORDER FOR PLAINTIFF TO:<br><br>(1) NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ONLY ON THE CLAIMS FOUND COGNIZABLE BY THE COURT FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT AGAINST DEFENDANTS R. TUMAN AND J. COTA;<br><br>(2) FILE A FIRST AMENDED COMPLAINT; OR<br><br>(3) NOTIFY THE COURT THAT HE WISHES TO STAND ON HIS COMPLAINT, SUBJECT TO THIS COURT ISSUING FINDINGS AND RECOMMENDATIONS TO THE DISTRICT JUDGE ASSIGNED TO THIS CASE<br><br>THIRTY (30) DAY DEADLINE |

## I. INTRODUCTION

Paul Richardson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. On August 31, 2018, Plaintiff

1

commenced this action by filing a Complaint against R. Tuman, C. Saenz, G. Kidd, and J. Cota (collectively "Defendants"). (ECF No. 1). Plaintiff alleges that Defendants: forced Plaintiff to enroll in a substance abuse treatment program, in violation of Plaintiff's right to free exercise of religion; falsified a rules violation report in retaliation for Plaintiff litigating multiple civil rights cases; failed to intervene to prevent retaliation, harassment, discrimination, and undue punishment; destroyed Plaintiff's property in retaliation for Plaintiff's complaints; and issued a rules violation report in retaliation for filing a grievance.

The Court has screened the Complaint[1] and finds that Plaintiff states claims against Defendant R. Tuman and Defendant J. Cota for retaliation, in violation of the First Amendment. The Court will provide Plaintiff with leave to file a First Amended Complaint, if he believes that additional facts will establish other claims with the assistance of the legal standards set forth below. Plaintiff may also choose to proceed only on the claims found cognizable in this order, or to stand on this Complaint, subject to the undersigned issuing findings and recommendations to the assigned district judge consistent with this order.

**II.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

The Court may also screen a complaint brought *in forma pauperis* under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] Petitioner has filed a request to proceed with the current complaint without reference to the additional documents filed on August 31, 2018. (ECF No. 13). As the Court previously denied Plaintiff's motion to incorporate the additional documents, (ECF No. 9), the Court will grant the request and screen Petitioner's Complaint without reference to the additional documents filed on August 31, 2018.

1  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, Hosp. Bldg. Co. v. Trs. of Rex Hospital, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF PLAINTIFF'S COMPLAINT

The events at issue in the Complaint allegedly occurred at Avenal State Prison.[2] In Claim I, the Complaint alleges that Plaintiff was called to a job placement duty on June 1, 2018. A counselor requested that Plaintiff sign enrollment papers for a substance use disorder treatment program. Plaintiff refused, claiming that his "life is void of any drugs or addictions" because his religion dictates that Plaintiff's life be free from drugs. (ECF No. 1 at 3).[3] Although Plaintiff expressed this to the counselor, Counselor Richardson informed Plaintiff that failure to sign the enrollment papers would result in a rules violation report ("RVR"). When asked, Counselor Richardson informed Plaintiff that Correctional Counselor R. Tuman ("Defendant Tuman") was authorizing this policy. Subsequently, Plaintiff signed the enrollment papers.

---

[2] Plaintiff currently is housed at the Amity Foundation in Los Angeles, California. (ECF No. 12).
[3] Page numbers refer to the ECF page numbers stamped at the top of the page.

In Claim II, the Complaint alleges that on July 20, 2018, Plaintiff received an RVR "concerning days lost not just in the substance use disorder treatment building but classes that had nothing to do with any concern of R. Tuman or his building." (ECF No. 1 at 4). Plaintiff alleges the RVR was fabricated with lies. Plaintiff claims he had passes and ducats for the library because at that time he was litigating three cases. Plaintiff had expressed his need for time in the library to the staff, who all knew about Plaintiff's litigation. Plaintiff confronted Correctional Officer G. Kidd ("Defendant Kidd") regarding the information contained in the RVR. Defendant Kidd informed Plaintiff it was a "lie" that Kidd called looking for Plaintiff because Kidd was not at work on that day or time. After some investigation Plaintiff filed a grievance, asserting that the RVR was based on falsified documents. Plaintiff claims that Defendant Tuman and Substance Use Disorder Counselor C. Saenz ("Defendant Saenz") violated Plaintiff's civil rights because Plaintiff filed civil complaints against the Sacramento Department of Corrections where Defendants Tuman and Saenz previously worked.

In Claim III, the Complaint alleges that one week before the allegedly false RVR was issued, Defendant Kidd was informed by Correctional Sergeant Duck to talk with Defendants Saenz and Tuman regarding "respect and retaliation against" Plaintiff. Defendant Kidd expressed that he would because he felt that Plaintiff was being targeted due to Plaintiff's race.[4] Plaintiff had expressed his concerns being the only African American in Saenz's class to Defendant Kidd, who responded, "Man I don't want any problems, I want to go home!" Plaintiff alleges that Defendant Kidd failed to intervene with respect to Defendants Tuman and Saenz's "constant harassment, discrimination, and undue punishment." (ECF No. 1 at 5).

In Claim IV, the Complaint alleges that Plaintiff filed a Rights and Responsibility Statement Form against Defendant Tuman that was screened on August 21, 2018. That same day, Defendant Tuman was alerted to Plaintiff's filing and issued an RVR against Plaintiff in retaliation. The reporting employees were Defendants Kidd and Saenz. Plaintiff also alleges that on August 24, 2018, Plaintiff was in receiving and release ("R & R") being processed for transfer

---

[4] Plaintiff alleges he was one of only eight African Americans on the yard and the only African American in Defendant Saenz's class.

4

to a different institution. Correctional Officer J. Cota ("Defendant Cota"), the packing and transfer officer, answered the phone. Plaintiff heard Cota state, "Yeah, he's here now, yeah I got it, yeah J46614? O.K., I'd burn the shit if I could, O.K. yeah." Defendant Cota then called Plaintiff over and destroyed or threw away half of Plaintiff's property, including civil complaints, photos, clothes, books, and documents. Cota said, "Hey, this is R & R, you need to quit complaining because things happen here." (ECF No. 1 at 6).

## IV. EVALUATION OF PLAINTIFF'S COMPLAINT

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). See also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588

F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676–77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

6

**A. CLAIM I: Free Exercise of Religion**

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" Shakur v. Schriro, 514 F.3d 878, 883–84 (9th Cir. 2008) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see Shakur, 514 F.3d 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies).

If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884–85. "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jones v. Williams, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (alteration in original) (internal quotation marks omitted) (quoting Ohno v. Yasuma, 723 F.3d 984, 1011 (9th Cir. 2013)).

"A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone, 482 U.S. at 348). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 482 U.S. at 349. The challenged conduct "is valid if it is reasonably related to legitimate penological interests." Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

Additionally, The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Plaintiff must allege facts demonstrating that defendant substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994–95 (9th Cir. 2005). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation or action at issue "substantially burdens" that religious exercise. Greene v. Solano Cty. Jail, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" Hartmann, 707 F.3d at 1124–25 (citing San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in Emp't Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 878–82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)." Int'l Church of the Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011) (citing Guru Nanak Sikh Society of Yuba City v. County of Sutter, 456 F.3d 978, 988 (9th Cir. 2006)). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Hartmann, 707 F.3d at 1125 (citing Warsoldier, 418 F.3d at 995).

Applying these legal standards, the Court finds that Plaintiff has not sufficiently alleged a claim for unconstitutional burden of religion under either the Free Exercise Clause or RLUIPA. Plaintiff alleges that he was forced to enroll in a substance use disorder treatment program, in

violation of his religion, which dictates that Plaintiff's life be free from drugs. Although Plaintiff sufficiently pleads a sincerely held belief rooted in religion, Plaintiff fails to allege sufficient facts to show that compelled participation in the substance use disorder treatment program coerced Plaintiff to act contrary to his religious belief to be free from drugs or exerted substantial pressure on Plaintiff to modify his drug-free behavior and to violate his beliefs.

**B. CLAIM II: False Allegations, Retaliation, Access to Courts**

1. False Allegations

Filing false allegations by itself does not violate a prisoner's constitutional rights so long as (1) the prisoner receives procedural due process before there is a deprivation of liberty as a result of false allegations, and (2) the false allegations are not in retaliation for the prisoner exercising constitutional rights. The Court provides legal standards in this order and will permit Plaintiff to amend the Complaint if he believes that the false allegations would state a claim under these legal standards.

It is well settled that making false statements, in and of itself, does not violate the United States Constitution. The Ninth Circuit held in Hernandez v. Johnston, 833 F.2d 1316 (9th Cir. 1987), that inaccurate information in a prison record did not violate the prisoner's due process rights. Id. at 1318 ("Magistrate Burgess did not discuss Hernandez' separable claim of a due process right to accurate information in his prison record. We address the issue, and hold that Hernandez was not deprived of liberty by the presence of the challenged statements.").

Although there is no Ninth Circuit case on point, the issue of when false allegations give rise to a constitutional claim was thoroughly addressed in a decision of this district, which was affirmed by the Ninth Circuit in an unpublished decision:

> A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). As long as a prisoner receives procedural due process during his disciplinary hearing, a prisoner's allegation of a fabricated prison disciplinary charge fails to state a cognizable claim for relief under § 1983. *See Freeman*, 808 F.2d at 951 (the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary

9

> infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.").
>
> Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California relying on the cases cited above have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983. *See, e.g., Conner v. Winslow*, No. EDCV 07–218 AG (AN), 2009 WL 1549737 at *18 (C.D. Cal. June 1, 2009); *Williams v. Foote*, No. CV 08–2838 CJC (JTL), 2009 WL 1520029 at *7 (C.D. Cal. May 28, 2009); *Salisbury v. Miller*, No. C 08–4680 MHP (pr), 2009 WL 743925 at *2 (N.D. Cal. Mar. 18, 2009); *Meraz v. Reppond*, No. C 08–4540 MHP (pr), 2009 WL 723841 at *2 (N.D. Cal. Mar. 18, 2009); *Rodgers v. Reynaga*, No. CV 1–06–1083 JAT, 2009 WL 62130 at *2 (E.D. Cal. Jan. 8, 2009); *Drake v. Berg*, No. C 07–3844 PJH (PR), 2008 WL 4482848 at *1 (N.D. Cal. Oct. 1, 2008); *Moore v. Thomas*, No. C 06–2105 SBA (PR), 2008 WL 4447726 at *4 (N.D. Cal. Sept. 30, 2008); *Deadmon v. Grannis*, No. 06–cv–1382 LAB (WMC), 2008 WL 595883 at *10 (S.D. Cal. Feb. 29, 2008); *Carrillo v. Pena*, No. CIV S–06–2924 RRB DAD, 2007 WL 2994689 at *2 (E.D. Cal. Oct. 12, 2007); *Player v. Salas*, No. 04–cv–1761 LAB (WMc), 2007 WL 2781102 at *7 (S.D. Cal. Sept. 21, 2007), *aff'd* 2009 WL 890967 (9th Cir. Apr. 3, 2009); *Brookins v. Terhune*, No. CIV S–03–0916 GEB JFM, 2005 WL 3262940 at *4 (E.D. Cal. Nov. 28, 2005), *adopted by* 2006 WL 647975, *aff'd* 2007 WL 2827544 (9th Cir. Sept. 27, 2007).
>
> In this case, plaintiff alleges that defendants violated his due process rights by bringing a false rules violation charge against him. However, as noted above, the issuance of a false disciplinary charge is not in itself a due process violation so long as prison officials comply with procedural due process requirements. Here, plaintiff does not allege that the defendants Costa or Mendes failed to provide him with procedural due process protections.

Harper v. Costa, No. CIV S-07-2149 LKK DAD P, 2009 WL 1684599, at *2–3 (E.D. Cal. June 16, 2009), aff'd, 393 F. App'x 488 (9th Cir. 2010).

Thus, Plaintiff's claim that he received an RVR based on false allegations does not rise to a constitutional violation on its own, unless: (1) Plaintiff did not receive procedural due process before there was a deprivation of liberty as a result of the false allegations, or (2) the false allegations were done in retaliation for Plaintiff's exercise of a constitutional right. This does not mean that filing false charges comports with prison regulations or state law. The question before this Court, however, is whether filing false allegations violated Plaintiff's rights under the United States Constitution.

Here, Plaintiff alleges that the false RVR prevented Plaintiff's early release. However, Plaintiff does not specify what penalties he received based on the false allegations and does not allege a violation of procedural due process in adjudicating the allegedly false claims. In Heck v.

1  Humphrey, 512 U.S. 477, 486–87 (1994), the United States Supreme Court held that to recover
2  damages for "harm caused by actions whose unlawfulness would render a conviction or sentence
3  invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or
4  otherwise invalidated. The favorable termination rule laid out in Heck preserves the rule that
5  claims which, if successful, would necessarily imply the invalidity of a conviction or sentence,
6  must be brought by way of a petition for writ of habeas corpus. Muhammad v. Close, 540 U.S.
7  749, 750–751 (2004). The Supreme Court extended the Heck favorable termination rule to prison
8  disciplinary proceedings. Edwards v. Balisok, 520 U.S. 641, 648 (1997); Nettles v. Grounds, 830
9  F.3d 922, 927 (9th Cir. 2016) (*en banc*), cert. denied, 137 S. Ct. 645 (2017).

"[C]hallenges to disciplinary proceedings are barred by Heck only if the § 1983 action would be 'seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served.'" Nettles, 830 F.3d at 928–29 (quoting Muhammad, 540 U.S. at 754–55). "The applicability of the favorable termination rule turns solely on whether a successful § 1983 action would *necessarily* render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir. 2003). Accord Nettles, 830 F.3d at 929 ("If the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought in § 1983."). "In evaluating whether claims are barred by Heck, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148, 1153–54 (9th Cir. 2002) (quoting Heck, 512 U.S. at 487).

The Complaint does not contain sufficient facts to state a due process claim under § 1983. The Complaint does not give any *factual* basis for asserting that Plaintiff was denied an earlier release because of the false accusations or that Plaintiff did not receive procedural due process in adjudicating the allegedly false claims. Additionally, the Court notes that the Complaint does not contain sufficient allegations for the Court to determine whether any due process claim regarding the allegedly false RVR should be brought in habeas or § 1983.

11

"If the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served, then the claim . . . may be brought in § 1983." Nettles, 830 F.3d at 929. However, if the invalidity of the RVR would necessarily affect Plaintiff's length of time to be served (*i.e.*, the RVR resulted in the loss of credits and Plaintiff is serving a determinate sentence), then: (1) the claim lies at the core of habeas corpus and must be brought in habeas; and (2) would be subject to the favorable termination rule, which requires the disciplinary proceeding to have been reversed, expunged, or otherwise invalidated, before Plaintiff could recover damages.

The Court has provided the pertinent legal standards above and will permit Plaintiff to amend the Complaint if he believes that the false allegations would state a due process claim under § 1983 according to these legal standards.

That said, Plaintiff does allege that the false allegations were made in retaliation for his exercise of the First Amendment through filing civil rights complaints. The Court addresses that claim below.

2. Retaliation

The First Amendment protects a prisoner's right to seek redress of grievances from prison authorities and a prisoner's right of meaningful access to the courts. Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015). In the context of prisons, a First Amendment retaliation claim is comprised of five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

Plaintiff's allegations in Claim II are insufficient to state a First Amendment retaliation claim against Defendants Tuman and Saenz. The Complaint does not clearly allege facts demonstrating that adverse action was taken against Plaintiff *because* he engaged in protected conduct. Even taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, the Complaint does not allege facts sufficient to show a causal link between Plaintiff's

1 protected activity (*i.e.*, litigating his civil rights cases) and Defendants Tuman and Saenz
2 allegedly causing the July 20, 2018 RVR to be issued.[5] Although Plaintiff alleges that all the
3 staff knew about Plaintiff's litigation and that Plaintiff had filed civil complaints against the
4 Sacramento Department of Corrections where Defendants Tuman and Saenz previously worked,
5 such allegations are insufficient to demonstrate a causal link.

        3. Access to Courts

Prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement without direct interference from prison officials. Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 824–25 (1977); Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011), overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). However, the right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. To claim a violation of this right, a plaintiff must show that he has suffered an actual injury as a result of the alleged interference. Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 351. In other words, he must be able to show that the deprivation has directly impacted the relevant litigation in a manner adverse to him. Lewis, 518 U.S. at 348 (defining "actual injury" as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim"). While Plaintiff has a constitutional right to access the courts, the interferences complained of by Plaintiff must have caused him to sustain an actual injury. Id. at 351; Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

Plaintiff's allegations are insufficient to state an access to the courts claim. Plaintiff has not shown that any prison officials' actions, or failure to act, caused him actual prejudice with respect to pending litigation or a claim that he was unable to bring. The Complaint is devoid of any facts suggesting that Plaintiff suffered an injury impacting Plaintiff's cases, such as the

---

[5] The Court notes that although Plaintiff alleges that Defendants Tuman and Saenz were responsible for the issuance of the false July 20, 2018 RVR, it is unclear which officer wrote the RVR and which officers were the reporting employees.

inability to meet a filing deadline or to present a claim. Therefore, Plaintiff fails to state a claim for denial of access to the courts.

### C. CLAIM III: Deliberate Indifference and Failure to Intervene

#### 1. Eighth Amendment

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. Farmer, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." Id. (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," that is, "one of deliberate indifference." Id. (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Id. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

///

1    Plaintiff has alleged that one week prior to the issuance of the false July 20, 2018 RVR, Defendant Kidd was directed, but failed, to intervene with respect to Defendants Tuman and Saenz's "constant harassment, discrimination, and undue punishment." (ECF No. 1 at 5). "However, '[t]he issuance of Rules Violation Reports, even if false, does not rise to the level of cruel and unusual punishment.'" Hutchinson v. Infante, No. 2:16-cv-0114 KJM AC P, 2017 WL 1709474, at *2–3 (E.D. Cal. May 3, 2017) (quoting Cauthen v. Rivera, No. 1:12-cv-01747 LJO DLB PC, 2013 WL 1820260, at *10 (E.D. Cal. Apr. 30, 2013)). See also Jones v. Prater, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. June 1, 2012) ("[P]laintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendants issued a false rules violation against plaintiff."). Thus, to the extent that Plaintiff alleges Defendant Kidd failed to intervene with respect to the false RVR, the allegations are insufficient for Eighth Amendment liability.

    2. Equal Protection

The Complaint alleges that despite Defendant Kidd's acknowledgement that Plaintiff was being targeted based on race and despite Plaintiff expressing concerns to Kidd about being the only African American in Saenz's class, Defendant Kidd failed to intervene with respect to Defendants Tuman and Saenz's "constant harassment, discrimination, and undue punishment." (ECF No. 1 at 5). It appears that Plaintiff may be attempting to allege an equal protection claim based on Defendant Tuman and Saenz's underlying conduct, which Defendant Kidd failed to intervene to stop.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of plaintiff's membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 601–

1 02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

As the allegations of Claim III may be more properly considered as equal protection claims against Defendants Tuman and Saenz rather than a failure to intervene claim against Defendant Kidd, Plaintiff will be given the option to amend the Complaint.

**D. CLAIM IV: Retaliation**

As set forth above, in the context of prisons, a First Amendment retaliation claim is comprised of five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567–68.

The Complaint states a First Amendment retaliation claim against Defendant Tuman in Claim IV. Taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, Plaintiff alleges that he engaged in protected behavior (i.e., filing a Rights and Responsibility Statement Form against Tuman) and that Defendant Tuman took adverse action (i.e., issuing an RVR against Plaintiff) on the same day the grievance was screened. See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal."); Rhodes, 408 F.3d at 568 n.11 (suggesting that allegations that a plaintiff suffered harm are sufficient "since harm that is more than minimal will almost always have a chilling effect").

The Complaint also states a First Amendment retaliation claim against Defendant Cota in Claim IV. Taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, Plaintiff alleges that three days after his grievance against Tuman was screened, Defendant Cota threw away or destroyed half of Plaintiff's personal property while saying, "Hey, this is R & R, you need to quit complaining because things happen here." (ECF No. 1 at 6).

///

## V. CONCLUSION AND ORDER

The Court has screened Plaintiff's Complaint and finds that it states cognizable claims in Claim IV against Defendant Tuman and Defendant Cota for retaliation, in violation of the First Amendment. The Court finds that Plaintiff's Complaint fails to state any other cognizable claims or claims against any other defendants.

Plaintiff may (1) proceed with the Complaint on the claims found cognizable by the Court, (2) file a First Amended Complaint curing the deficiencies identified by this order, or (3) notify the Court that he stands on the Complaint as written, in which case the undersigned will issue findings and recommendation to the assigned district judge consistent with this order. If Plaintiff chooses to file a First Amended Complaint, that complaint will supersede the initial Complaint and the Court will screen the First Amended Complaint in full.

Should Plaintiff choose to amend the complaint, the amended complaint must allege constitutional violations under the law as discussed above. The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff is reminded that Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934. Plaintiff is advised that a short, concise statement of the allegations in chronological order will assist the Court in identifying his claims. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the violation of Plaintiff's rights. Plaintiff should also describe any harm he suffered as a result of the violation.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1

(9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's request to proceed with current complaint without reference to additional documents (ECF No. 13) is GRANTED;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **THIRTY (30) days** from the date of service of this order, Plaintiff shall either:
   (a) Notify the Court in writing that he does not wish to file a First Amended complaint and is instead willing to proceed only on First Amendment retaliation claims against Defendant Tuman and Defendant Cota; or
   (b) File a First Amended Complaint attempting to cure the deficiencies identified in this order; or
   (c) Notify the Court in writing that he wishes to stand by the Complaint as written, in which case the undersigned will issue findings and recommendation to the assigned district judge consistent with this order;
4. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:18-cv-01166-EPG; and

///
///
///
///
///

5. If Plaintiff fails to comply with this order, the undersigned may recommend dismissal of the case for failure to comply with a court order and failure to prosecute.

IT IS SO ORDERED.

Dated: **February 19, 2019**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE